UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

BLAKE SANDLAIN,

Defendant.

_____/

Civil Case No. 15-cv-12845
Criminal Case No. 14-cr-20283

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
R. STEVEN WHALEN

ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255, DENYING MOTION FOR AN EVIDENTIARY HEARING [68] AS MOOT AND DENYING A CERTIFICATE OF APPEALABILITY

I. INTRODUCTION

On January 8, 2015, petitioner Blake Joseph Sandlain ("Petitioner"), a parolee, pleaded guilty, by way of a Rule 11 plea agreement, to felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a). On May 7, 2015, the Petitioner was sentenced to 180 months imprisonment. The judgment of sentence was entered on May 21, 2015. Petitioner filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 on August 7, 2015. Dkt. No. 55. On October 5, 2015, Petitioner moved for an evidentiary hearing. *See* Dkt. No. 68. The Government filed a response to the § 2255 motion on October 12, 2015. *See* Dkt. No. 70.

Petitioner raises six claims of ineffective assistance of counsel. *Id.* For the reasons discussed below, the Court **DENIES** Petitioner's motion to vacate, set aside or correct sentence. The Court further **DENIES** Petitioners motion for an evidentiary hearing as **MOOT**.

-1-

## II. BACKGROUND

On April 28, 2014, Michigan Department of Corrections ("MDOC") Officer Michelle Lopez-Glazer ("Agent Lopez") conducted a routine parole home visit at the residence of Petitioner Sandlain. In preparation for her routine parole home visit, Agent Lopez testified that she reviewed her file of Sandlain.

As a part of this review, Agent Lopez consulted Sandlain's parole file, which contained Sandlain's Offender Tracking Information System ("OTIS") – Offender Profile, which indicated that Petitioner had given written consent to search his person and/or property. Agent Lopez testified that she typically receives these documents for her parolees.

While reviewing Petitioner's file, Agent Lopez testified that she became aware of Petitioner's criminal history and the fact that he was on parole for a drug distribution conviction, and had prior felony convictions for firearms possession and escape from jail through violence. Agent Lopez also testified that she believed Petitioner had a history of drug abuse.

In conducting the parole home visit, Agent Lopez testified that she was accompanied by five officers from the Wayne State University Police Department: Officer Ryan Spanger, Officer Mohammad Bazzy, Officer Kim Dent, Officer Ernest Myatt, and Officer Diana Napier. Agent Lopez and Officer Bazzy each testified that all of the officers were wearing plain clothes with their badges around their necks so they could be identified as law enforcement.

Upon arrival at the apartment complex of Petitioner, Agent Lopez and Officer Bazzy testified that they gained entry from other residents in the building. Petitioner's counsel did not raise this as an issue. Agent Lopez and Officer Bazzy each testified that they forcefully knocked at Petitioner's door more than once and announced their presence, with no response. Agent Lopez and Officer Bazzy further testified that there was no doorbell at the residence, and noted

that following their knocks they heard shuffling sounds and noises coming from the interior of the residence. Distinctly, Agent Lopez testified that she heard a voice come from within the apartment. Officer Bazzy testified that he did not hear voices. Petitioner's counsel did not cross examine Officer Bazzy (though the Co-Defendant's counsel did). Agent Lopez and Officer Bazzy were the only two testifying witnesses at the hearing.

Given these circumstances, Agent Lopez testified that, based on her experience as a parole officer, she believed exigent circumstances existed and that entry was necessary to prevent the destruction of evidence. The officers testified they were let into the residence of Petitioner by a maintenance man of the building minutes later. Upon entering the apartment, the officers testified that they viewed an open bedroom window and a window screen on the bed. Near the bed was a sandwich bag that contained roughly 200 bags of what officers suspected was heroin. Officers also found two pistols in the bedroom. One of the pistols was near a wallet containing Petitioner's driver's license. In the kitchen, the officers found what they suspected to be a brick of heroin, a razor blade and a digital scale. Tests proved the substances found were in fact heroin.

On July 7, 2014, Petitioner motioned to suppress the evidence found in the apartment. Dkt. No. 24. At the hearing, Petitioner's counsel argued that the searches were unauthorized and lacked reasonable suspicion. Dkt. No. 35 at 4-11, Pg. ID No. 188-195. On September 16, 2014, the Court denied Petitioner's motion to suppress the evidence. Dkt. No. 33. On January 8, 2015, Petitioner pleaded guilty to one count of felon in possession of a firearm and one count of possession with intent to distribute heroin. Dkt. No. 44. On May 21, 2015, the Petitioner's sentence of 180 months imprisonment was entered. Dkt. No. 52.

### III. LEGAL STANDARD

A defendant seeking relief under § 2255 "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). When raising claims alleging errors of constitutional magnitude, a defendant must show that the constitutional error had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

### IV. DISCUSSION

Ineffective assistance of counsel claims are subject to the two-prong performance and prejudice test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *See also Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Under the performance prong, defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* (citing *Strickland,* 466 U.S. at 687-88). However, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *Strickland*, 466 U.S. at 690. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510 (2003). "[I]f the defendant does not demonstrate that his counsel's performance was deficient, [the court] do[es] not need to consider the issue of prejudice." *Post v. Bradshaw*, 621 F.3d 406, 414 (6th Cir. 2010).

-4-

Under the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### A. PETITIONER'S FIRST GROUND: FAILURE TO RAISE A SPECIFIC ISSUE AT THE SUPPRESSION HEARING

Petitioner first argues that counsel was ineffective because counsel did not raise specific case law at his suppression hearing. At his suppression hearing, Agent Lopez, a witness for the government, testified that she and several police officers entered into a common area of Petitioner's apartment building after another tenant held the door open for them. Petitioner argues that had his counsel referenced *United States v. Carriger*, 541 F.2d 545 (6th Cir. 1976) or *United States v. McDonald*, 69 S. Ct. 191 (1948), the evidence found against him would have been suppressed and changed the outcome of his case. Dkt. No. 55 at 53-54, Pg. ID No. 394-395. Thus, the argument continues, that under *Joshua v. DeWitt* his counsel was ineffective because it failed to raise an issue governed under "clear precedential authority as well as unique factual similarities." *Joshua v. DeWitt*, 341 F.3d 430, 441 (2003).

*Carriger* and *McDonald* are very similar cases, and *Carriger* is the more relevant of the two. *Carriger* revolved around similar factual circumstances. In that case, a criminal defendant appealed his conviction on the grounds that his Fourth Amendment rights were violated when police officers walked into the common area of his apartment building, without a warrant, behind another tenant. *Carriger*, 541 F.2d at 547. Police officers followed a tenant through an ordinarily locked door into the common area of the building, where they witnessed what appeared to be a drug transaction. *Id.* The Sixth Circuit held that when "an officer enters a locked building,

without authority or invitation, the evidence gained as a result of his presence in the common areas of the building must be suppressed." *Id.* at 552.

The present case presents a similar, but not an identical issue. Here, officers attempted to enter an apartment building only to find that the door was locked. Dkt. No. 34 at 9, Pg. ID No.128. Similar to the police officers in *Carriger*, they entered the building, without a warrant, after another building occupant exited and left the door open. *Id.* However, in *Carriger*, the appellant was not on parole at the time of his arrest. The fact that Petitioner is a parolee makes his case factually distinguishable and is ultimately fatal to his argument.

*Carriger* makes clear that the average resident in an apartment building has a privacy interest in the common areas of an apartment building against intruders. *Carriger*, 541 F.2d at 551. Assuming that the parole officers entered into the building without authorization[1] and without a warrant, the facts at hand do constitute a 'search' within the meaning of the Fourth Amendment. *Katz v. U.S.*, 389 U.S. 347, 360 (1967). However, under the Fourth Amendment, the critical determination is not whether the search was authorized by warrant, but whether the search was **reasonable**. *Terry v. Ohio*, 392 U.S. 1, 9 (1968) ("For what the Constitution forbids is not all searches and seizures, but **unreasonable** searches and seizures.") (emphasis added) (quotations omitted).

---

[1] Though a tenant may have a privacy interest in that space against intruders, one cannot necessarily say that the space is "owned" in the traditional sense by the tenant.

Assuming *arguendo* that the apartment common area is **not** the property of the petitioner, then the parole agent may have either been authorized, or **not have even needed authorization,** to enter the apartment building. This distinction is emphasized in *Katz*. The "reasonable expectation of privacy doctrine" does not line up perfectly with the "trespass" doctrine (which has made a resurgence as of late). As a result, one may have a privacy interest in things or spaces that are **not** one's property. Michigan Administrative Code Rule 791.7735(2) requires "reasonable cause" to search property, but is silent as to what is needed to search other privacy interests that are not the property of the parolee.

For the purposes of this Motion, the Court does not have to answer this question.

"The determination of the standard of reasonableness governing any specific class of searches requires 'balancing the need to search against the invasion which the search entails.'" *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 536-537 (1967)). The determination of whether the search here is reasonable requires "assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848 (2006).

In balancing the interests between the respective parties, the Court must note that "the Supreme Court has made clear that the nature of the relationship between state actors and individuals subject to state supervision in lieu of or following release from prison alters the relevant analysis under the Fourth Amendment." *United States v. Herndon*, 501 F.3d 683, 687 (6th Cir. 2007); *see also McKune v. Lile*, 536 U.S. 24, 36 (2002) (stating that in the context of incarceration, "[a] broad range of choices that might infringe constitutional rights in free society fall within the expected conditions . . . of those who have suffered a lawful conviction.").

The Court notes that the state has a "substantial" interest in supervising its parolees. *See Samson*, 547 U.S. at 853. The Supreme Court "has repeatedly acknowledged that a State has an 'overwhelming interest' in supervising parolees because 'parolees. . . are more likely to commit future criminal offenses.'" *Id.* (quoting *Pennsylvania Bd. Of Prob. & Parole v. Scott*, 524 U.S. 357, 365 (1998)). Similarly, the Supreme Court "has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Id.* (citing *Griffin v. Wisconsin*, 483 U.S. 868, 879 (1987); *United States v. Knights*, 534 U.S. 112, 121 (2001)).

-7-

Parolees undoubtedly retain **some** expectation of privacy. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty"). Nevertheless, the Supreme Court has explained that this expectation of privacy is **low**. For example, in *Samson*, the Supreme Court applied a totality of the circumstances test in evaluating and upholding a suspicion-less search of a parolee. Comparing parolees with regular probationers, the Court explained that parolees share an expectation of privacy akin to that of prisoners still incarcerated:

> [P]arolees are on the continuum of state-imposed punishments. On this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment. As this Court has pointed out, parole is an established variation on imprisonment of convicted criminals. . . The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abides by certain rules during the balance of the sentence. In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements . . . **On the Court's continuum of possible punishments, parole is the stronger medicine; ergo, parolees enjoy even less of the average citizen's absolute liberty than do probationers.**

*Samson,* 547 U.S. at 850 (emphasis added) (internal quotation marks and citations omitted).

The Sixth Circuit has also noted that a parolee's expectation of privacy is severely curbed. The Circuit Court has stated that "[p]arolees do not enjoy the full panoply of rights afforded the average citizen," and has noted that parolees "know that at any time, they may be sent back to jail for conduct that would be perfectly lawful for the average citizen." *United States v. Carnes*, 309 F.3d 950, 961-962 (6th Cir. 2002). Thus, in making a decision about the admissibility of evidence found in the Petitioner's home, this Court would have emphasized the rather substantial and established interests of the government, as articulated by the Supreme court and Sixth Circuit; as compared to the slight interest, as articulated for parolees.

-8-

2:14-cr-20283-GAD-RSW   Doc # 72   Filed 10/20/15   Pg 9 of 14   Pg ID 488

Accordingly, Petitioner's status as a parolee makes this case materially distinct from *Carrigan*. The fact that counsel did not raise this issue was not unreasonable under *Strickland*.[2] Therefore, the principle advanced by *Joshua* does not apply, and Petitioner's claim of ineffective assistance of counsel on this ground fails.

## B. PETITIONER'S SECOND GROUND: FAILURE TO CROSS EXAMINE A PAROLE AGENT LOPEZ ON HOME VISIT POLICY

Petitioner's second sub-claim argues that his counsel was also ineffective because there was no cross examination of the parole agent with regard to the Michigan Department of Corrections ("MDOC") Home Visit Policy. Specifically that the "Home Visit Policy only allows the Parole Agent to visit a Parolee's home with consent of parolee." Dkt. No. 55 at Pg. ID No. 351. Petitioner's argument states:

> The Home Visit Policy only allows the Parole Agent to visit a Parolee's home with consent of the Parolee, to establish his residence. If this Court endorses this type of entry into the locked common area of Petitioner's apartment building as well as his apartment on the basis of a home visit, it will completely abrogate [the] Parolee's Constitutional Protections against unreasonable searches and seizure.

Dkt. No. 55 at Pg. ID 396. Petitioner's argument is without merit.[3]

First, Petitioner has attached this "Home Visit Policy" as Exhibit D in the Motion. Dkt. No. 55 at Pg. ID 354. Nowhere within this exhibit does it state that a home call cannot be made

---

[2] Even if, hypothetically, counsel's decision to not raise this very narrow issue at the suppression hearing was unreasonable, it did not prejudice petitioner's case. Here, the privacy interest is already relatively low compared to the privacy interest one has in their **apartment**. At this particular apartment building, it was apparently normal for tenants to leave the door open for strangers without having to require any proof of their residency. If such a license was implied amongst the tenants of the building, then the privacy interest in the common area amongst the non-parolees in the building (though enough to suppress evidence found by a trespassing state actor) must not be too substantial. Petitioner's status as a parolee only emphasizes this disparity. Therefore, considering the substantial government interest at hand, the search was likely reasonable, and the evidence was unlikely to be suppressed because of it.

[3] Petitioner's Memorandum of Law in Support of his Motion makes further arguments for why his Motion should be granted on this ground. Dkt. No. 55 at Pg. ID No. 396. However, the arguments advanced in his Memorandum only speak to why the evidence against him should be suppressed under the Fourth Amendment. These arguments are not relevant to the Sixth Amendment.

-9-

without the consent of the parolee. *Id.* Upon realizing that the exhibit was incomplete, the Court took it upon itself to find a complete version of the exhibit.[4] Once again, the Court found no text stating that home visits could only be made at the parolee's consent. To be absolutely sure, the Court took it upon itself to look into the statutes from which this particular exhibit derives its authority. None of those statutes require parole agents to get the consent of a parolee before making a home visit either. *See* MICH. COMP. LAWS 731.240; MICH. COMP. LAWS 791.236;[5] MICH. COMP. LAWS 791.231; MICH. COMP. LAWS. 791.223; MICH. ADMIN. CODE R. 791.9920.

Failing to cross examine this particular provision of the Home Visit Policy doesn't violate either of the *Strickland* prongs because this particular provision of the Home Visit Policy **does not exist**. Even if it did exist, Petitioner has failed to prove that failing to cross on this issue would have been unreasonable or prejudicial under *Strickland. Piontek v. Palmer*, 546 Fed. Appx. 543, 549 (6th Cir. 2013) ("This court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy.") (quotations omitted). Therefore, the Motion fails on this ground.

### C. PETITIONER'S THIRD GROUND: FAILURE TO SUBPOENA PAROLE AGENT BORKLEY

Petitioner's next sub-claim argues that his counsel was ineffective because his assigned parole officer, Adoni Borkley ("Agent Borkley"), was not subpoenaed. Petitioner contends that because Agent Borkley was not called, it "caused [the] [C]ourt to use inaccurate information in

---

[4] A complete version of Petitioner's Exhibit D, the Michigan Department of Corrections Policy Directive, can be found at http://www.michigan.gov/documents/corrections/06_04_130_347835_7.pdf.

[5] MCLA 791.236 says, "the parole order shall require a parolee to provide written consent to submit to a search of his or her person or property upon demand by a peace officer or parole officer." However, this particular statute makes no reference to home visits. Parole agents are still authorized to conduct searches of property upon reasonable cause, such as plain view, without consent. Mich. Admin. Code R. 791.7735(2).

its assessment of reasonable [suspicion] in denying Petitioner [its] motion to suppress evidence." Dkt. No. 55 at Pg. ID No. 398. This claim also fails to meet the standard set forth by *Strickland*.

Even poorly conceived and badly executed defenses can survive the *Strickland* test. *Stadler v. Curtin*, 682 F. Supp. 2d 807, 826 (E.D. Mich. 2010). Furthermore, the choice to call a witness is a strategic choice to be made by the attorney that is presumed to be sound. *Id.*; *see also Strickland*, 466 U.S. at 689. Once that presumption attaches, it is up to the Petitioner to prove that the strategic choices of counsel have "no hope of succeeding, are made without adequate investigation or preparation, or actually imperil the defendant's case." *Stadler*, 682 F. Supp. at 825. Furthermore, "[c]laims that counsel failed to call witnesses are not favored on federal habeas review because. . . speculation about what witnesses would have said on the stand is too uncertain." *Potter v. Smith*, 2010 WL 3905145, *6 (E.D. Mich. 2010) (citing *Woodfox v. Cain*, 609 F.3d 774, 2010 WL 2505580, *26 (5th Cir. 2010) (quotations omitted). Therefore, on a claim such as this, we require petitioners "to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense." *Id*.

Here, Petitioner has failed to show Agent Borkley was available, would have testified, and that the testimony was favorable to a particular defense. Petitioner alleges that the search of his property was based on reasonable suspicion derived solely from his drug history. Petitioner, however, fails to acknowledge that Agent Lopez, at the time of entering the apartment, also was aware of the Petitioner's criminal history, that the Petitioner had been involved in drug crimes, and heard shuffling and shortly voices after knocking and announcing her presence at Petitioner's door. Dkt. No. 34 at Pg. ID No. 126. Even without believing that Petitioner abused

drugs, there were sufficient articulable facts to form the reasonable cause for a search. Thus, Petitioner has failed to show that his case was prejudiced by counsel's choice to not call Agent Borkley. Therefore, the Motion on this ground also fails.

### D.  PETITIONER'S FOURTH GROUND: FAILURE TO CROSS EXAMINE OFFICER TESTIMONY REGARDING PURPORTED EXIGENT CIRCUMSTANCES

Petitioner's next sub-claim argues that his counsel was ineffective because counsel failed to cross examine conflicting testimony regarding the circumstances of the search of the apartment. Dkt. No. 55 at Pg. ID No. 369. Specifically that Lopez heard voices at the door but Officer Bazzy did not. *Id.* Petitioner's argument on this ground is also without merit.

Petitioner's counsel did in fact cross examine the circumstances surrounding the basis of the search. Dkt. No. 34 at Pg. ID No. 137-138. Counsel did not cross examine Officer Bazzy using Agent Lopez's testimony, but that choice did not have a prejudicial effect on Petitioner's case. Highlighting this inconsistency within Agent Lopez's testimony would not have so dramatically lowered her credibility in the eyes of the Court as to find that she in fact did not have reasonable cause to enter Petitioner's apartment.[6] Therefore, the Motion on this ground fails the *Strickland* test.

### E.  PETITIONER'S FIFTH GROUND: FAILURE TO CROSS EXAMINE MISSING CONSENT FORM

Petitioner's fifth sub-claim argues that his counsel was ineffective for failing to appropriately cross examine a purported consent form. Dkt. No. 55 at Pg. ID No. 374. This sub-claim is without merit. Petitioner's counsel did cross examine this issue when Agent Lopez was

---

[6] Especially considering that this was a joint motion to suppress and the Co-Defendant's counsel cross examined Officer Bazzy on this topic. Dkt. No. 34 at Pg. ID No. 173. Any cross examination done by Petitioner's counsel would have just been **redundant**. It seems reasonable to the Court to divide up cross examination topics to avoid redundancy.

on the stand. Dkt. No. 34 at Pg. ID No. 136. Counsel also made compelling arguments during the hearing on this issue:

> And, so, at this stage there is no evidence that Mr. Sandlain consented to a search of his apartment. There's no evidence of any signed form. There's no evidence from the Michigan Department of Corrections either as part of a business record, [or] its official records that he ever executed a consent to search, and so the government cannot rely on consent –

Dkt. No. 35 at Pg. ID. No. 191.

Despite counsel's advocacy, the Court found that "even without consent, if 'there is reasonable cause to believe that a violation of parole exists, a parole agent may conduct a search of a parolee's person or property if, as soon as possible thereafter, the parole agent files a written report with his or her supervisor setting forth the specific reasons for the search, describing the location or place searched, and describing the specific items seized." Dkt. No. 33 at 4, Pg. ID No. 117 (quoting Mich. Admin. Code r. 91.7735(1)(d)(2013)). Therefore, this issue was not dispositive because the Court found reasonable cause to exist. *Id.* at Pg. ID No. 119 ("Once the knock went unanswered, Mich. Admin. Code R. 731.7735(2) gave the officers the authority to enter the apartment."). Therefore, Petitioner has failed to show that his case was prejudiced. Therefore the Motion fails on this ground as well.

### F.  PETITIONER'S SIXTH GROUND: FAILURE TO CITE PRECEDENTIAL AUTHORITY

Petitioner's final sub-claim argues that his counsel was ineffective for failing to "cite precedential authority" demonstrating that the apartment maintenance man acted as a government agent when he opened Petitioner's apartment door for the officers. Dkt. No. 61 at 1, Pg. ID No. 424. This sub-claim is without merit. Whether or not the maintenance man was acting as a state agent has no bearing on the outcome of the case. Indeed, as described above, if the

police officers had opened the door themselves, the outcome of Petitioner's case would have remained unchanged. Therefore, this sub-claim also fails the *Strickland* test.

## IV. CONCLUSION

Accordingly, for the reasons discussed above, Petitioner's Motion to vacate, set aside or correct sentence is **DENIED**. Petitioner's Motion for an Evidentiary Hearing is **DENIED** as **MOOT**. Petitioner's Motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 is **DISMISSED** with prejudice. A certificate of appealability shall not issue.

IT IS SO ORDERED.

Dated: October 20, 2015

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge